UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT ) ) ) ) Plaintiff ) ) ) VS. ) ) P.F. CHANG'S CHINA BISTRO, INC. ) ) Defendant ) | CASE NUMBER:<br><br>: cv    (    )<br><br><br><br><br><br><br><br><br><br><br>OCTOBER 2, 2014 |

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff, The Travelers Indemnity Company of Connecticut ("Travelers"), for its Declaratory Judgment Complaint against the Defendant, P.F. Chang's China Bistro, Inc. ("P.F. Chang's") alleges as follows:

### Nature Of This Action

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*

2. In this action, Travelers seeks a declaration that it is not obligated to defend or indemnify P.F. Chang's under Commercial General Liability insurance policies issued by Travelers to P.F. Chang's as a Named Insured in relation to litigation arising out of an alleged theft of customers' financial information.

3. More specifically, Travelers seeks a declaration there is no defense or indemnity coverage under the Travelers policies, identified in detail below, in relation to the following litigation: (a) *Daniel Lovell, Individually And On Behalf Of A Class Of Those Similarly Situated v. P.F. Chang's China Bistro, Inc.*, bearing Docket Number 2:14-cv-01152, pending in the United States District Court for the Western District of Washington, Seattle Division (the

"Lovell Lawsuit"); (b) *Lucas Kosner, Individually And On Behalf Of A Class Of Those Similarly Situated v. P.F. Chang's China Bistro, Inc.*, bearing Docket Number 1:14-cv-04923, pending in the United States District Court for the Northern District of Illinois, Eastern Division (the "Kosner Lawsuit"); and (c) *John Lewert, Individually And On Behalf Of A Class Of Those Similarly Situated v. P.F. Chang's China Bistro, Inc.*, bearing Docket Number 1:14-cv-04787, pending in the United States District Court for the Northern District of Illinois, Eastern Division (the "Lewert Lawsuit") (referred to collectively herein as the "Lawsuits").

4. P.F. Chang's provided an initial notice of claim to Travelers regarding the Lawsuits.

## Jurisdiction And Venue

5. Travelers is an insurance company organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. Travelers issued the subject policies, identified below, from its offices in Connecticut. The documentation relating to the Travelers policies is presently located at Travelers' Connecticut offices.

6. Upon information and belief, Defendant P.F. Chang's is a Delaware corporation with its principal place of business in Scottsdale, Arizona. P.F. Chang's conducts business in Connecticut, advertises in Connecticut, and operates multiple restaurants in Connecticut. Accordingly, this Court has personal jurisdiction over P.F. Chang's.

7. The amount in controversy exceeds $75,000 exclusive of costs and interest.

8. Jurisdiction in this Court therefore is proper under 28 U.S.C. § 1332 (a) (1) in that Travelers and P.F. Chang's are citizens of different states, and the amount in controversy exceeds $75,000.

9.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this judicial district and the Court has personal jurisdiction over the Defendant, P.F. Chang's.

## The Policies At Issue

10.     Travelers issued Policy No. HC2E-GLSA-9355B838-TCT-13 to P.F. Chang's as a Named Insured for the policy period January 1, 2013 to January 1, 2014 (the "2013 Policy").

11.     Travelers issued Policy No. HC2E-GLSA-9355B838-TCT-14 to P.F. Chang's as a Named Insured for the policy period January 1, 2014 to January 1, 2015 (the "2014 Policy"). The 2013 Policy and the 2014 Policy are referred to collectively herein as "the Policies."

12.     The policy provisions relevant to this Declaratory Judgment Action are identified below.  However, Travelers expressly reserves its right to rely on the Policies, in their entirety, in seeking a declaratory judgment that there is no duty to defend or indemnify P.F. Chang's under the Policies in relation to the Lawsuits.  Further, Travelers reserves the right to modify and amend this Declaratory Judgment Complaint.

## The Lovell Lawsuit

13.     On or about July 30, 2014, Daniel Lovell filed the Lovell Lawsuit in the United States District Court for the Western District of Washington, Seattle Division.  A true and accurate copy of the July 30, 2014 Complaint (the "Lovell Complaint") is attached hereto as *Exhibit A* and incorporated by reference.  In the Lovell Lawsuit, Lovell asserts claims arising out of P.F. Chang's alleged failure to properly safeguard its customers' financial information and a data breach resulting from that alleged failure.  In the Lovell Lawsuit, Lovell seeks Class Action certification and asserts claims on his own behalf and on behalf of the allegedly similarly situated Class Members.

14. The Lovell Lawsuit includes claims for negligence (Count One), breach of implied contract (Count Two), breach of fiduciary duty (Count Three), strict liability (Count Four), negligent misrepresentation (Count Five), and violations of the Arizona Deceptive Trade Practices Act (Count Six). In the prayer for relief, Lovell seeks, *inter alia*, damages, including actual, statutory and punitive damages, as well as attorney's fees, litigation costs, and interest.

15. More particularly, the Lovell Complaint includes the following pertinent allegations: P.F. Chang's failed to prevent a significant data breach that compromised its customers' personal financial data; as a result of P.F. Chang's lapses in security, criminal hackers were able to obtain access to credit and debit card data between September 18, 2013 and June 11, 2014; during this period of time, P.F. Chang's failed to disclose to its customers that its "subpar security systems placed their financial data at risk;" P.F. Chang's received notice of the breach on June 10, 2014; and P.F. Chang's confirmed the breach on June 13, 2014. (Lovell Complaint, ¶¶ 1-3, 9.) Lovell further alleges that the aggregate amount in controversy exceeds $5,000,000. (Lovell Complaint, ¶ 6.) These allegations are incorporated by reference into each Count of the Lovell Complaint.

16. The Lovell Complaint also includes allegations that P.F. Chang's likely could have prevented this data breach. (Lovell Complaint, p. 7.) In support of this position, Lovell alleges that P.F. Chang's should have been on notice to ensure its own systems were not vulnerable to a similar attack in light of prior breaches, including a recent breach involving the Target Corporation. (Lovell Complaint, ¶¶ 15-17.) Lovell further claims the "length of time that P.F. Chang's security was compromised strongly suggests that the Company was failing to comply with the Payment Card Industry Data Security Standard" (Lovell Complaint, ¶¶ 18-20), and "there is significant evidence P.F. Chang's was using outdated point-of-sale software"

(Lovell Complaint, ¶¶ 21-22). Further, Lovell alleges that had Lovell and the Class Members known P.F. Chang's did not abide by industry-standard security practices, they would have paid less for their meals or not eaten at P.F. Chang's. (Lovell Complaint, ¶¶ 4, 23.) Once again, these allegations are incorporated into each Count of the Lovell Complaint.

17. The Lovell Complaint also includes allegations that Lovell and the Class Members entered into implied contracts with P.F. Chang's under which P.F. Chang's agreed to safeguard and protect all information. (Lovell Complaint, ¶ 42.) Lovell further alleges that he and the Class Members would not have entrusted their private, confidential financial and personal information to P.F. Chang's in the absence of such an implied contract with P.F. Chang's. These allegations are incorporated into Counts Two through Six of the Lovell Complaint.

18. With regard to claimed damages, Lovell alleges: Lovell and the Class Members would have paid less for their meals or not purchased them at all had P.F. Chang's disclosed the alleged security risks; cyber-criminals now possess the personal financial information belonging to Lovell and the Class Members; and Lovell and the Class Members must replace their credit cards, update their information and add themselves to credit fraud lists, which impairs their ability to obtain additional credit. (Lovell Complaint, ¶¶ 23-24.)

19. P.F. Chang's is presently represented in the Lovell Lawsuit by attorneys from the law firm of Lewis, Brisbois, Bisgaard & Smith LLP, upon information and belief, pursuant to a separate cyber liability insurance policy that Travelers did not issue. The Policies contain a Liability Self-Funded Retentions Endorsement, Form CG D6 09 10 11, which modifies the CGL coverage part and which provides a Self-Funded Retention of $250,000 applicable to Each CGL Incident. Even if there is coverage under the Policies, which Travelers expressly denies,

Travelers does not presently have a defense obligation under the Policies because, upon information and belief, P.F. Chang's has not exhausted the Policies' Self-Funded Retention.

### The Kosner Lawsuit

20.     On or about June 30, 2014, Lucas Kosner filed the Kosner Lawsuit in the United States District Court for the Northern District of Illinois, Eastern Division.  A true and accurate copy of the Complaint, dated June 30, 2014 (the "Kosner Complaint"), is attached hereto as ***Exhibit B*** and incorporated by reference.  In the Kosner Lawsuit, Kosner asserts claims arising out of P.F. Chang's alleged failure to properly safeguard its customers' financial information, including credit and debit card information.  Kosner seeks Class Action certification and filed the suit on his own behalf and on behalf of the allegedly similarly situated Class Members.

21.     The Kosner Complaint includes claims for breach of implied contract (Count One), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, as well as substantially similar laws of the Consumer Fraud Statutes (Counts Two and Three).  In the prayer for relief, Kosner seeks, *inter alia*, damages, including actual, statutory and punitive damages, as well as attorney's fees, litigation costs, and interest.

22.     More particularly, the Kosner Complaint includes the following pertinent allegations: P.F. Chang's received notification on June 10, 2014 from the United States Secret Service of a data breach involving the theft of customers' credit and debit card data (Kosner Complaint, ¶ 2); on June 12, 2014, P.F. Chang's confirmed the data breach, which reportedly involved approximately seven million customer credit/debit cards and began on or about September 18, 2013, almost nine months before P.F. Chang's became aware of the intrusion (Kosner Complaint, ¶ 3); and P.F. Chang's security failures enabled hackers to steal financial data and subsequently make unauthorized purchases on customers' credit, as well as debit, cards

and otherwise put the customers' financial information at a serious and ongoing risk (Kosner Complaint, ¶ 4).

23. Kosner further alleges: the security breach "was caused and enabled by [P.F. Chang's] knowing violation of its obligations to abide by best practices and industry standards in protecting customers' personal information" (Kosner Complaint, ¶ 5); "P.F. Chang's grossly failed to comply with security standards and allowed its customers' financial information to be compromised, all in an effort to save money by cutting corners on security measures that could have prevented or mitigated the Security Breach that occurred" (Kosner Complaint, ¶ 5); Kosner entered into an implied contract with P.F. Chang's for the adequate protection of his financial information and had his financial information exposed as a result of P.F. Chang's inadequate security (Kosner Complaint, ¶ 11); "P.F. Chang's allowed widespread and systematic theft of its customers' financial information" (Kosner Complaint, ¶ 18); and P.F. Chang's "actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect customer's financial information" (Kosner Complaint, ¶ 18). These allegations are incorporated into each Count of the Kosner Complaint.

24. Further, in Count One of the Kosner Complaint, Kosner alleges that he and the Class Members entered into an implied contract with P.F. Chang's whereby P.F. Chang's became obligated to reasonably safeguard the sensitive, non-public information, and P.F. Chang's breached this implied contract. (Kosner Complaint, ¶¶ 51-54.)

25. Counts Two and Three of the Kosner Complaint include allegations that P.F. Chang's violated state and federal consumer protection laws and that the claimed injuries were caused by P.F. Chang's fraudulent and deceptive behavior, which was conducted with reckless indifference towards the rights of others. (Kosner Complaint, ¶¶ 55-85.)

26. With regard to damages, Kosner alleges, in relevant part, that P.F. Chang's deprived its costumers the full monetary value of their transactions with the company (Kosner Complaint, ¶ 30); customers have suffered actual damages, including monetary losses arising from unauthorized bank account withdrawals, fraudulent card payments and/or related bank fees charged to their accounts (Kosner Complaint, ¶ 31); customers must expend time continuing to check their credit reports (Kosner Complaint, ¶ 32); customers have suffered damages arising from costs associated with identity theft and the increased risk of identity theft caused by P.F. Chang's wrongful conduct (Kosner Complaint, ¶ 34); and customers have suffered damages based on the opportunity cost and value of time that the customers have been forced to expend to monitor their financial and bank accounts as a result of the breach (Kosner Complaint, ¶ 35). These allegations are incorporated into each Count of the Kosner Complaint.

27. P.F. Chang's is presently represented in the Kosner Lawsuit by attorneys from the law firm of Lewis, Brisbois, Bisgaard & Smith LLP, upon information and belief, pursuant to a separate cyber liability insurance policy that Travelers did not issue. The Policies contain a Liability Self-Funded Retentions Endorsement, Form CG D6 09 10 11, which modifies the CGL coverage part and which provides a Self-Funded Retention of $250,000 applicable to Each CGL Incident. Even if there is coverage under the Policies, which Travelers expressly denies, Travelers does not presently have a defense obligation under the Policies because, upon information and belief, P.F. Chang's has not exhausted the Policies' Self-Funded Retention.

**The Lewert Lawsuit**

28. On or about June 25, 2014, John Lewert filed the Lewert Lawsuit in the United States District Court for the Northern District of Illinois, Eastern Division. A true and accurate copy of the Complaint, dated June 25, 2014 (the "Lewert Complaint"), is attached hereto as

8

***Exhibit C*** and incorporated by reference. In the Lewert Lawsuit, John Lewert asserts claims arising out of P.F. Chang's alleged failure to properly safeguard its customers' financial information, including credit and debit card information. Lewert seeks Class Action certification and files the suit on his own behalf and on behalf of the allegedly similarly situated Class Members.

29. The Lewert Lawsuit includes claims for breach of implied contract (Count One) and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, as well as substantially similar laws of the Consumer Fraud Statutes (Count Two). In the prayer for relief, the Lewert Complaint seeks, *inter alia*, damages, including actual, statutory and punitive damages, as well as attorney's fees, litigation costs, and interest.

30. More particularly, the Lewert Complaint includes the following allegations: P.F. Chang's received notification on June 10, 2014 of a data breach involving the theft of customers' credit, as well as debit, card data and verified the breach on June 12, 2014, which reportedly began in September 2013 and involved approximately seven million accounts (Lewert Complaint, ¶ 2); and P.F. Chang's security failures enabled hackers to steal financial data and subsequently make unauthorized purchases on customers' credit, as well as debit, cards and otherwise put the customers' financial information at a serious and ongoing risk (Lewert Complaint, ¶ 3).

31. Lewert further alleges that the security breach "was caused and enabled by P.F. Chang's knowing violation of its obligations to abide by best practices and industry standards in protecting customers' personal information" (Lewert Complaint, ¶ 4); "P.F. Chang's failed to comply with security standards and allowed their customers' financial information to be compromised, all in an effort to save money by cutting corners on security measures that could

have prevented or mitigated the Security Breach that occurred" (Lewert Complaint, ¶ 4); Lewert used a debit card to make his purchase at P.F. Chang's and, as a result, entered into an implied contract with P.F. Chang's for the adequate protection of his financial information, which was exposed as a result of P.F. Chang's inadequate security (Lewert Complaint, ¶ 10); "P.F. Chang's allowed widespread and systematic theft of its customers' financial information" (Lewert Complaint, ¶ 16); and P.F. Chang's "actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect customers' financial information" (Lewert Complaint, ¶ 16). These allegations are incorporated into each Count of the Lewert Complaint.

32. Further, in Count One, Lewert alleges that he and the Class Members entered into an implied contract with P.F. Chang's whereby P.F. Chang's became obligated to reasonably safeguard the sensitive, non-public information, and P.F. Chang's breached this implied contract. (Lewert Complaint, ¶¶ 52-53.)

33. In Count Two, Lewert alleges that P.F. Chang's violated state and federal consumer protection laws, and that the claimed injuries were caused by P.F. Chang's fraudulent and deceptive behavior, which was conducted with reckless indifference towards the rights of others. (Lewert Complaint, ¶¶ 55-68.)

34. With regard to damages, the Lewert Complaint includes the following pertinent allegations: P.F. Chang's deprived its costumers of the full monetary value of their transactions with the company (Lewert Complaint, ¶ 32); the customers have suffered actual damages, including monetary losses arising from unauthorized bank account and/or related bank fees charged to their accounts (Lewert Complaint, ¶ 33); customers have suffered damages arising from costs associated with identity theft and the increased risk of identity theft caused by P.F.

Chang's wrongful conduct (Lewert Complaint, ¶ 34); customers must expend time continuing to check their credit reports (Lewert Complaint, ¶ 35); and customers have suffered damages based on the opportunity cost and value of time that the customers have been forced to expend to monitor their financial and bank accounts as a result of the breach (Lewert Complaint, ¶ 36). These allegations are incorporated into each Count of the Lewert Complaint.

35.     P.F. Chang's is presently represented in the Lewert Lawsuit by attorneys from the law firm of Lewis, Brisbois, Bisgaard & Smith LLP, upon information and belief, pursuant to a separate cyber liability insurance policy that Travelers did not issue. The Policies contain a Liability Self-Funded Retentions Endorsement, Form CG D6 09 10 11, which modifies the CGL coverage part and which provides a Self-Funded Retention of $250,000 applicable to Each CGL Incident. Even if there is coverage under the Policies, which Travelers expressly denies, Travelers does not presently have a defense obligation under the Policies because, upon information and belief, P.F. Chang's has not exhausted the Policies' Self-Funded Retention.

<b><u>First Count – Declaratory Judgment – No Duty To Defend –<br>No Coverage Triggered Under The Policies</u></b>

36.     Travelers incorporates paragraphs 1-35 as if fully set forth herein.

37.     The initial grant of liability coverage under the Policies' Coverage A expressly and unambiguously provides, in relevant part, as follows:

> **1.     Insuring Agreement**
>
>> **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

* * *

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period. . . .

\* \* \*

38. The Policies expressly and unambiguously define the term "occurrence" as follows: "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

39. The Policies expressly and unambiguously define the terms "bodily injury" and "property damage" as follows:

    **3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

With respect to all operations, "bodily injury" in the **DEFINITIONS** section of this insurance is amended to include mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

"Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Property damage" does not include loss of or damage to "electronic media and records".

As used in this definition, "electronic media and records" means:

a.  Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

b.  Data stored on such media; or

c.  Programming records for electronic data processing or electronically controlled equipment.

\* \* \*

40. The initial grant of liability coverage under the Policies' Coverage B expressly and unambiguously provides, in relevant part, as follows:

   1.  **Insuring Agreement**

       a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

\* \* \*

       b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

41. By way of Endorsement No. CG D4 71 02 09, the Policies expressly and unambiguously define the term "personal and advertising injury" to mean "personal injury" or "advertising injury."

42. The Policies expressly and unambiguously define the terms "personal injury" and "advertising injury" as follows:

"Advertising injury":

 **a.** Means injury, other than "personal injury", caused by one or more of the following offenses:

  **(1)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

  **(2)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

   **(a)** Appropriates a person's name, voice, photograph or likeness;

   **(b)** Unreasonably places a person in a false light; or

   **(c)** Discloses information about a person's private life; or

  **(3)** Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

 **b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph a. above.

* * *

"Personal injury":

 **a.** Means injury, other than "advertising injury", caused by one or more of the following offenses:

  **(1)** False arrest, detention or imprisonment;

  **(2)** Malicious prosecution;

  **(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by

      or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

   **(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

   **(5)** Oral or written publication, including publication by electronic means, of material that:

     **(a)** Appropriates a person's name, voice, photograph or likeness;

     **(b)** Unreasonably places a person in a false light; or

     **(c)** Discloses information about a person's private life.

 **b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

* * *

43. The Lawsuits fail to trigger coverage under the Policies because they do not allege "bodily injury" or "property damage" caused by an "occurrence," nor do they allege "advertising injury" or "personal injury" as the Policies expressly and unambiguously define those terms.

44. Travelers therefore is entitled to a declaration that it does not have a duty to defend P.F. Chang's in the pending Lawsuits.

### Second Count – Declaratory Judgment – No Duty To Indemnify – No Coverage Triggered Under the Policies

45. Travelers incorporates paragraphs 1-44 as if fully set forth herein.

46. Travelers therefore is entitled to a declaration that it does not have a duty to indemnify P.F. Chang's in the pending Lawsuits.

### Third Count – Declaratory Judgment – No Duty To Defend – Exclusions For Violation Of Consumer Financial Protection Laws

47. Travelers incorporates paragraphs 1-46 as if fully set forth herein.

48. The Policies contain exclusions for Violation of Consumer Financial Protection Laws, which expressly and unambiguously state that the insurance does not apply to:

> **Violation Of Consumer Financial Protection Laws**
>
> "Bodily injury" or "property damage" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "bodily injury" or "property damage" alleged in any claim or "suit" that also alleges any such violation.

\* \* \*

> **Violation Of Consumer Financial Protection Laws**
>
> "Personal injury" or "advertising injury" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such violation.

\* \* \*

49. The Policies expressly and unambiguously define the terms "consumer financial identity information" and "consumer financial protection law" as follows:

> "Consumer financial identity information" means any of the following information for a person that is used or collected for the purpose of serving as a factor in establishing such person's eligibility for personal credit, insurance or employment, or for the purpose of conducting a business transaction:
>
> a. Part or all of the account number, the expiration date or the balance of any credit, debit, bank or other financial account.
>
> b. Information bearing on a person's credit worthiness, credit standing or credit capacity.
>
> c. Social security number.
>
> d. Drivers license number.

16

    e.    Birth date.

"Consumer financial protection law" means:

    a.    The Fair Credit Reporting Act (FCRA) and any of its amendments, including the Fair and Accurate Credit Transactions Act (FACTA);

    b.    California's Song-Beverly Credit Card Act and any of its amendments; or

    c.    Any other law or regulation that restricts or prohibits the collection, dissemination, transmission, distribution or use of "consumer financial identity information".

* * *

50. Travelers denies that the Lawsuits trigger coverage under the Policies; however, even if the Lawsuits trigger coverage, the above-referenced express, unambiguous exclusions for Violation of Consumer Financial Protection Laws bar coverage.

51. Travelers therefore is entitled to a declaration it does not have a duty to defend P.F. Chang's in the pending Lawsuits.

### Fourth Count – Declaratory Judgment – No Duty To Indemnify – Exclusions For Violation Of Consumer Financial Protection Laws

52. Travelers incorporates paragraphs 1-51 as if fully set forth herein.

53. Travelers therefore is entitled to a declaration it does not have a duty to indemnify P.F. Chang's in the pending Lawsuits.

**WHEREFORE,** Travelers respectfully requests a judgment against P.F Chang's as follows:

(a)     Declaring that Travelers is not obligated to defend P.F Chang's as to the claims asserted against it in the Lovell Lawsuit;

(b)     Declaring that Travelers is not obligated to indemnify P.F. Chang's for any amounts the underlying plaintiffs recover against P.F. Chang's in the Lovell Lawsuit, whether by judgment, settlement or otherwise;

(c)     Declaring that Travelers is not obligated to defend P.F Chang's as to the claims asserted against it in the Kosner Lawsuit;

(d)     Declaring that Travelers is not obligated to indemnify P.F. Chang's for any amounts the underlying plaintiffs recover against P.F. Chang's in the Kosner Lawsuit, whether by judgment, settlement or otherwise;

(e)     Declaring that Travelers is not obligated to defend P.F Chang's as to the claims asserted against it in the Lewert Lawsuit;

(f)     Declaring that Travelers is not obligated to indemnify P.F. Chang's for any amounts the underlying plaintiffs recover against P.F. Chang's in the Lewert Lawsuit, whether by judgment, settlement or otherwise;

(g)     Declaring that Travelers does not presently have a duty to defend P.F. Chang's in the Lawsuits because P.F. Chang's has not exhausted the Policies' Self-Funded Retention;

(h)     Awarding Travelers its attorneys' fees and costs in this action; and

(i)     Awarding such other and further relief allowed by law and/or equity as the Court deems just and proper.

## JURY DEMAND ON ALL CLAIMS AND DEFENSES SO TRIABLE

The Travelers Indemnity Company of Connecticut hereby demands a jury trial with respect to all issues so triable.

Dated at Simsbury, Connecticut on this 2nd day of October, 2014.

                THE PLAINTIFF,
                THE TRAVELERS INDEMNITY
                COMPANY OF CONNECTICUT


        By   /s/ Robert L. Ciociola
                Robert L. Ciociola, ct21313
                Melicent B. Thompson, ct19868
                Kathleen F. Adams, ct28120
                Litchfield Cavo LLP
                82 Hopmeadow Street, Suite 210
                Simsbury, CT 06089-9694
                Tel: (860) 413-2800
                Fax: (860) 413-2801
                ciociola@litchfieldcavo.com
                thompson@litchfieldcavo.com
                adamsk@litchfieldcavo.com